J-A13040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.S | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.L.S. | |
| Appellant | No. 1666 WDA 2014 |

Appeal from the Order October 2, 2014
In the Court of Common Pleas of Butler County
Civil Division at No(s): F.C.No. 09-90223-C

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 19, 2015**

K.L.S. ("Mother") appeals from the order entered on October 2, 2014, in the Court of Common Pleas of Butler County, that denied her petition to modify the existing custody order and set forth a new custody schedule with respect to the parties' son, I.M.S., born in September of 2008. Upon careful review, we affirm.

The record reveals the following factual and procedural history. I.M.S. was born during the marriage of Father and Mother. The parties separated in March of 2009, when I.M.S. was six months old. Trial Court Opinion, 10/2/14, at 1.[1] Upon separation, Mother and I.M.S. moved to the home of

_____

[1] The trial court opinion accompanying the subject order and the trial court opinion pursuant to Pa.R.A.P. 1925(a) do not contain pagination. For ease
*(Footnote Continued Next Page)*

her parents in McDonald, in Washington County,[2] a driving distance of approximately 45 minutes from the marital home in Butler, in Butler County, where Father continued to reside throughout the underlying proceedings. N.T., 8/11/14, at 17, 30.

On April 1, 2009, Father initiated the custody action by filing a complaint for shared physical and legal custody. Trial Court Opinion, 10/2/14, at 1. The court directed the parties to undergo a custody evaluation with Martin B. Meyer, Ph.D. *Id.* Following a trial, on June 7, 2010, the court granted Father and Mother shared legal and physical custody with Father having custody every Sunday through Wednesday, and Mother every Wednesday through Saturday. *Id.* at 2. The order directed that the parties alternate the Saturday evening to Sunday evening custodial period. *Id.* The trial court "noted that the custody arrangement would only be applicable until the child began school full time due to the distance between the parties' residences. The [c]ourt also encouraged the parties to reduce the distance between their residences to resolve this issue." *Id.*

In March of 2012, Mother and I.M.S. moved to the home of D.D. ("Stepfather"), her then paramour, in Plum, in Allegheny County. N.T., 8/11/14, at 30, 197. In November of 2012, Mother and Stepfather married.

(Footnote Continued) ————————————

of review, in both trial court opinions, we have assigned each page a sequential page number.

[2] Father states in his appellee brief that the home of Mother's parents was located in Washington County. Father's brief at 4.

*Id.* at 197. They are the parents of C.D., a male child born in February of 2014. *Id.* at 6. In March of 2014, Mother and Stepfather moved to a single family home in Irwin, in Westmoreland County, a driving distance of 50 to 55 minutes from Father's home. *Id.* at 17, 197.

On February 24, 2014, in anticipation of I.M.S. commencing kindergarten in the fall of 2014, Mother filed a petition for modification of the existing custody order, wherein she requested primary physical custody. Trial Court Opinion, 10/2/14, at 2. Father filed a counter-petition for modification of the existing custody order, wherein he requested primary physical custody. *Id.* at 2. The trial court stated that the parties "were directed to undergo updated custody evaluations with Dr. Martin Meyer. Upon completion of the updated evaluations, a custody trial was held on August 11th and 18th, 2014." *Id.* Mother testified on her own behalf and presented the testimony of Stepfather. Father testified on his own behalf and presented the testimony of his friend, C.C.D., and Dr. Meyer, *via* telephone.

Notably, Dr. Meyer testified with respect to his custody recommendation, as follows:

> [M]y mantra in this case is that all things being equal, and all things are equal, the only difference is that mom chose to relocate. Otherwise, I would have recommended a 50/50, but a decision needs to be made, so the decision was that mom chose to move out of the area. So the recommendation was for father to be primary during the school year.

N.T., 8/18/14, at 34. Dr. Meyer continued on direct examination,

- 3 -

Q. Why do you believe that it's in [I.M.S.]'s best interests [for Father to have primary physical custody]?

A. Well, again, there is . . . nothing ruling out either litigant in terms of parenting. So the only deciding factor was the geographical move. So he would do well with either parent, and ideally the thing would be to have – continue the 50/50, but that's not practical.

*Id.* at 35.

At the conclusion of the hearing, the trial court

was informed that a prompt decision on the choice of school district for the child was necessary due to the time constraints involved. Having insufficient time to issue a comprehensive opinion before the child was to begin school, the Court issued an Interim Custody Order granting the parties shared legal custody and physical custody of the child, and directing that the child attend school in the area of Father's residence. The Court took the ultimate custody decision under advisement pending a final Order.

Trial Court Opinion, 10/2/14, at 3.

By order dated and entered on October 2, 2014, the trial court granted shared legal and physical custody to Mother and Father.[3] The court granted

_____

[3] The Act includes the following relevant definitions:

**"Partial physical custody."***.* --The right to assume physical custody of the child for less than a majority of the time.

. . .

**"Primary physical custody."**. --The right to assume physical custody of the child for the majority of time.

*(Footnote Continued Next Page)*

- 4 -

physical custody to Mother during the school year on alternating weekends from Thursday after school until Monday morning before school. During the weeks that follow Mother's custodial weekend, the court granted Mother physical custody from Thursday after school until Friday before school. During the weeks that follow Father's custodial weekend, the court granted Mother physical custody from Monday after school until Tuesday before school. The court granted Father physical custody at all other times during the school year "notwithstanding the provisions addressing holidays, exclusive vacation time, the child's birthday and summer break as provided herein." Order, 10/2/14, at ¶ 3(D). During I.M.S.'s summer vacation, the

*(Footnote Continued)* ———————————

. . .

**"Shared physical custody."**. --The right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child.

. . .

**"Shared legal custody."**. --The right of more than one individual to legal custody of the child.

23 Pa.C.S.A. § 5322.

court granted the parties equally shared physical custody on an alternating weekly basis.

On October 14, 2014, Mother filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On December 17, 2014, the trial court issued a Rule 1925(a) opinion.

On appeal, Mother raises the following issues for our review:

I. Whether the trial court erred in failing to grant Mother primary physical custody of [I.M.S.][?]

II. Whether the trial court erred in improperly relying on the report and testimony of the appointed evaluator who failed to follow mandatory guidelines in completing his evaluation and failed to give his recommendation with[in] a reasonable degree of professional certainty[?]

Mother's brief at 8.

The scope and standard of review in custody matters is as follows.

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

- 6 -

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer*, 902 A.2d at 540 (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902

A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Relevant to this custody case are the factors set forth in Section 5328(a) of the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, which provides as follows.

**§ 5328.  Factors to consider when awarding custody.**

**(a)  Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Further,

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a

- 9 -

written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, 87 A.3d at 822-823. With these standards in mind, we turn to the merits of this appeal.[4]

Mother's issues on appeal are inter-related, and so we review them together. She argues that the trial court committed an error of law in failing to weigh the Section 5328(a) custody factors in her favor. Mother addresses each factor listed in Section 5328(a). The crux of her argument is that, in failing to grant her primary physical custody during the school year, the trial court improperly focused on her move to Irwin, in Westmoreland County, and punished her for not residing in Butler County. Further, Mother argues

_____

[4] The Act was amended, effective January 1, 2014, to include the additional factor at 23 Pa.C.S.A § 5328(a)(2.1). In this case, the court considered all of the custody factors except § 5328(a)(2.1) in its opinion accompanying the subject order. *See* Trial Court Opinion, 10/2/14, at 6-12. Based on the record evidence, we conclude that the court's omission is harmless.

that the trial court erred in relying on the report and testimony of Dr. Meyer, the court-appointed custody evaluator.

We begin with the trial court's findings regarding Dr. Meyer's custody evaluation report and testimony. This Court has stated:

> [W]hen expert evaluation is uncontradicted or unqualified, a child custody court abuses its fact[-]finding discretion if it totally discounts expert evaluation. To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court [is] not obligated to accept the conclusions of the experts.

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (citations omitted).

In its opinion accompanying the subject order, the trial court stated that Dr. Meyer's "analysis of the case . . . was similar to the [c]ourt's own analysis." Trial Court's Opinion, 10/2/14, at 6. The court found credible the testimony and recommendation of Dr. Meyer as follows.

> Dr. Meyer's recommendation is that Father should have primary custody of the child during the school year, with the parties equally sharing custody during the summer. Dr. Meyer believes the ideal situation would be equally shared custody during the school year, but the distance between the parties' residences is a problem. Dr. Meyer's recommendation is based upon Mother's decision to relocate and the geography involved, as opposed to the parties' respective environments. Dr. Meyer found the parties' environments to be equally stable.
>
> Dr. Meyer found no psychological issues with either party. . . .

*Id.* at 7.

To the extent Mother contends that the trial court accepted the recommendation of Dr. Meyer by granting Father primary physical custody

- 11 -

during the school year, we disagree. A review of the custody order reveals that, during the weeks that Mother exercises weekend custody, she has four overnights with I.M.S., and Father has three overnights. In the alternating weeks, Mother has two overnights with I.M.S., and Father has five overnights. Thus, in a two-week custodial period, Mother has six overnights with I.M.S., and Father has eight overnights. We conclude that the court fashioned a shared custody arrangement during the school year because both parties have "significant periods of physical custodial time" with I.M.S. 23 Pa.C.S.A. § 5322.

Indeed, in its Rule 1925(a) opinion, the trial court explained as follows.

> The [c]ourt found the testimony and recommendation of the court-appointed custody evaluator, Dr. Martin Meyer, to be credible. Accordingly, the [c]ourt considered Dr. [Meyer's] recommendation in determining the custody outcome. **However, the [c]ourt made an independent judgment, as the [c]ourt is not bound by the expert's recommendation.** Furthermore, the [c]ourt specifically addressed the issue of the statutory custody factors as they relate to custody evaluations on the record during trial.

Trial Court Opinion, 12/17/14, at 4 (emphasis added). Because the court awarded the parties shared physical custody during the school year and did not make an award of primary physical custody as recommended by Dr. Meyer, we need not review Mother's arguments regarding whether Dr. Meyer "follow[ed] mandatory guidelines in completing his evaluation, and failed to

give his recommendation with[in] a reasonable degree of professional certainty." Mother's brief at 45.

For the same reason, we reject Mother's argument that, in failing to grant her primary physical custody during the school year, the trial court improperly focused on her move to Irwin, in Westmoreland County, and punished her for not residing in Butler County. Although Dr. Meyer's explanation, stated *infra*, for his physical custody recommendation may arguably indicate punishing Mother for moving outside of Butler County, the trial court did not follow his recommendation. Rather, the court awarded the parties shared physical custody during the school year based on its application of the Section 5328(a) custody factors.

A review of the trial court opinion accompanying the subject order reveals that the court found a majority of the Section 5328(a) custody factors did not weigh in favor of either Mother or Father.[5] **See** Trial Court Opinion, 10/2/14, at 6-12. Specifically, under Section 5328(a)(3), the parental duties performed by each party on behalf of the child, the trial court found, in relevant part, that "[s]ince separation, the parties have generally maintained an equally shared custody schedule, with both parties appropriately performing the regular caregiving duties." **Id.** at 8. The testimonial evidence supports the trial court's findings. Accordingly, we

---

[5] The trial court found that Section 5328(a)(2), (7), (14), and (15) are not relevant in this case.

discern no abuse of discretion by the court in its factual findings with respect to Section 5328(a)(3), and the weight the court placed on this factor.

In regards to Section 5328(a)(5), the availability of extended family, the trial court found that "[a]s the child spends significant time with both parents, the child will continue to have frequent contact with extended family regardless of which school district the child attends." *Id.* at 9. Mother argues that this factor favors her because she "has a large extended family that resides near her, all of whom have a relationship with [I.M.S.], spend time with [I.M.S.], and are able to assist with [I.M.S.]'s care if necessary, including Mother's parents, siblings, and other relatives." Mother's brief at 30. Further, she asserts that Father's parents are deceased, and that he "does not have significant family that have been involved with [I.M.S.] or can assist Father with [I.M.S.] in the future." *Id.* While the testimonial evidence supports Mother's assertion that she has a significant extended family who are available to assist with child care, and Father does not, we discern no abuse of discretion by the court in finding that I.M.S. "will continue to have frequent contact with extended family" based on the custody schedule. Trial Court Opinion, 10/2/14, at 9. In addition, we discern no abuse of discretion with respect to the weight the court placed on Section 5328(a)(5).

Similarly, in regards to Section 5328(a)(6), the child's sibling relationships, the trial court found that "as [I.M.S.] spends significant time

with both parents, he will be able to continue his strong relationship with [C.D.]." *Id.* at 9. Based on the custody schedule, we discern no abuse of discretion by the court in its factual findings with respect to Section 5328(a)(6), and the weight the court placed on this factor.

Under Section 5328(a)(8), the attempts of a parent to turn the child against the other parent, the trial court found, in part, that "[w]hile the parties have an adversarial relationship with each other, sufficient evidence has not been presented that would demonstrate that the child has been influenced by either parent against the other." *Id.* The testimonial evidence supports the trial court's findings. Accordingly, we discern no abuse of discretion by the court in its factual findings with respect to Section 5328(a)(8), and the weight the court placed on this factor.

Further, the trial court did not find significant the factors listed in Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, and Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. The court found, in effect, that these factors are equal between the parties. *Id.* at 10. Because the testimonial evidence supports this finding, we discern no abuse of discretion in the weight the court placed on Section 5328(a)(9) and (10).

Finally, the trial court found Section 5328(a)(12), the availability to care for the child or make appropriate child-care arrangements, neutral between the parties, as follows:

> Mother works full time and her schedule is flexible. She works three days from home and two days from the office which is twenty minutes away. Maternal Grandparents are available to provide child-care. [Stepfather] works from home and is available to assist with child-care as well. Father's work schedule is flexible and he typically works thirty hours from the office and ten hours from home. He has utilized day care when he is at work.

*Id.* at 11. The testimonial evidence supports the trial court's findings. Accordingly, we discern no abuse of discretion by the court in its factual findings with respect to Section 5328(a)(12), and the weight the court placed on this factor.

Next, we review the Section 5328(a) custody factors that the trial court weighed in favor of Father. Under Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, the court found, in part, that Mother has had "secretive behavior toward Father regarding legal custody issues. . . ." Trial Court Opinion, 10/2/14, at 7. As such, the court found "that Father is more likely to encourage and permit frequent and continuing contact between the child and the other party." *Id.*

The trial court's analysis under Section 5328(a)(1) is related to its analysis under Section 5328(a)(13), the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.

Although not specified, the court's analysis of Section 5328(a)(13) indicates that it weighed this factor in favor of Father.

> The trial court explained, in part:
>
> Mother does not like the hostile tone that Father uses towards her and believes his questioning is invasive. Father lacks trust in Mother because she has been secretive with him regarding decisions involving the child.
>
> . . .
>
> Mother is guarded because she believes Father will use the information she gives him against her. Testimony was presented regarding an incident where the child was bitten by a dog. Mother initially told Father that it had been her brother's dog, when in fact it was her brother-in-law's dog. Father asked for the dog's medical records and received only the vaccination records. Father eventually discovered the identity of the dog, but only learned the identity of the dog's owner at trial. This is an example of a legal custody issue in which it was highly inappropriate for Mother to withhold information from Father.
>
> Father was not provided sufficient notice by Mother of the move to her new residence [in Irwin, in Westmoreland County]. The house had been under construction for months without mentioning this to Father. Father was also not provided with sufficient information about [Stepfather], considering that Mother had prior knowledge that they would be moving in together.
>
> Generally, when Father asked for information Mother ignores his request or replies at the last minute with incomplete information. When Mother has taken out of state trips with the child she has generally provided Father with an address but not specific details.

Trial Court Opinion, 10/2/14, at 6, 11-12.[6]

_____

[6] The trial court instructed the parties as follows.

*(Footnote Continued Next Page)*

The testimony of Mother and Father supports the trial court's findings regarding Mother's omission, hesitancy, and/or delay in providing Father with the information detailed above. Therefore, we discern no abuse of discretion with respect to the court's findings under Section 5328(a)(13). Notably, the court did not find this factor determinative in making its physical custody award.

However, the same findings by the trial court do not support weighing Section 5328(a)(1) in favor of Father. The foregoing "secretive" behavior by Mother does not demonstrate her unwillingness to encourage and permit

*(Footnote Continued)* ────────────────

> The parties need to use common sense in their communications and eliminate the hostility and mistrust. Father must be made aware of the important people in the child's life. This is not to say that Mother must make a list of everyone that the child briefly encountered while in Mother's custody. Father needs to trust that Mother is a good parent and will make the right decisions for the child.
>
> Father must not instigate Mother with his questioning and Mother must not fear Father's response to her answers. Mother must be honest from the beginning with Father and inform him as soon as she becomes aware of a legal custody issue that should be discussed. When Mother is secretive and vague, she encourages Father's overly intrusive nature and risks miscommunication on important issues regarding the child. It is not up to Mother to decide which legal custody issues Father should be consulted on. He is entitled to be consulted on all legal custody issues.

Trial Court Opinion, 10/2/14, at 13.

frequent and continuing contact between I.M.S. and Father. Indeed, there is no testimonial evidence that Mother has ever impeded I.M.S.'s contact with Father. Therefore, we conclude the court's findings under Section 5328(a)(1) are not supported by the record. Nevertheless, because this factor was not determinative in the trial court's custody award, we do not disturb the subject order on this basis.

With respect to Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, the trial court found that,

> Mother proposes that the child attend morning kindergarten at the Penn Trafford school district where she resides. Father proposes that the child attend kindergarten at the Goddard School where he has attended daycare. Both parties represented that their respective school districts and neighborhoods are more suitable for the child. Based upon the evidence presented, and upon the [c]ourt's knowledge of the school districts, the [c]ourt finds that the school districts are equal and not a determinative factor. The [c]ourt finds that the neighborhoods and residences are relatively equal, but the child has more roots in Butler as Father continues to reside in the marital residence. The child has friends from the Goddard School who will be attending the Mars School District, where the child would attend at Father's residence.

Trial Court Opinion, 10/2/14, at 8-9. Further, in its Rule 1925(a) opinion, the trial court reasoned that, "The child has attended the Goddard School near Father's residence, which is a Preschool and Kindergarten. The child and his friends from the Goddard School will go on to attend elementary school at Mars School District, where Father resides." Trial Court Opinion, 12/17/14, at 5.

- 19 -

We discern no abuse of discretion by the court under Section 5328(a)(4). The testimonial evidence revealed that Mother and Stepfather had been living in the Penn Trafford School District for only five months at the time of the subject proceedings. In contrast, I.M.S. had been attending the Goddard School near Father's residence for preschool. As such, attending the Goddard School for kindergarten would lend stability and continuity in the child's educational life. Likewise, attending the Mars School District for elementary school would lend stability and continuity in I.M.S.'s educational life because children from the Goddard School would attend the same school district. Indeed, in this case, we conclude that an important consideration under Section 5328(a)(4) is that I.M.S. would begin first grade in the 2015/2016 school year, and that children from the Goddard School would attend the Mars School District. Therefore, we discern no abuse of discretion by the court in the weight it placed on this factor.

Finally, with respect to Section 5328(a)(11), the proximity of the residences of the parties, the trial court found that,

> The parties were advised in the [c]ourt's previous opinion that a change in the custody schedule would be necessary, and the [c]ourt encouraged the parties to reduce the distance [of their residences]. Despite this, Mother decided to move further away from Father's residence. Mother testified that she did not consider moving to the Butler area because there is no reason. Mother's considerations in moving to Irwin were the location of her office and the proximity to [Stepfather]'s family. The [c]ourt is concerned with Mother's lack of consideration for the stability and convenience of the child in choosing where to reside.

*Id.* at 10-11. Although the trial court faults Mother with the distance between the parties' residences, the court's findings under Section 5328(a)(11) were not determinative in the custody decision. Rather, the court stated that its "goal in fashioning a new custody schedule is to maximize the child's time spent with both parents while accounting for the child's school schedule." *Id.* at 13. Accordingly, because the trial court's consideration of the best interest of I.M.S. was careful and thorough, and the custody decision is reasonable in light of the court's sustainable findings, we affirm the custody order. *See King*, *supra*, (stating, "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party").

Order affirmed.[7]

Judgment Entered.

_____

[7] With respect to Mother's argument that the trial court erred in placing the burden for transportation on her, we conclude this claim is waived for not being included in the Statement of Questions Involved in her brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived).

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/19/2015</u>